# Wytheville.

## Blackwell v. Landreth.

### June 19th, 1894.

1. Slander—*Repetition—Evidence.*—Under plea of not guilty in action for defamation, the defendant cannot introduce witnesses to prove that they heard the same slander.
2. Idem—*Verdict—Costs.*—In such action the trial court had no power to enter judgment for five dollars only, where the verdict was for that sum and costs, but if the verdict was irregular, it should have been set aside and a new trial awarded.
3. Idem—*Inadequate damages—Case at bar.*—A verdict for five dollars and costs will be set aside as inadequate in action of slander of a girl of unblemished reputation by false imputations upon her chastity for the purpose of injuring an opposing candidate for office.

Error to judgment of circuit court of Wythe county, rendered at its March term, 1893, in an action for defamation of character, wherein Julia Blackwell was plaintiff and Robert Landreth was defendant. The judgment being unfavorable to the plaintiff, she brought the case here on error. Opinion states the case.

*Walker & Caldwell,* for plaintiff in error.

*J. H. Fulton* and *Robert Crocket,* for defendant in error.

Lacy, J., delivered the opinion of the court.

This case is as follows: The plaintiff in error was a young girl, the adopted daughter of J. R. Harkrader, sheriff of

Wythe county, living in his family. The defendant, Robert Landreth, was a citizen of Wythe county, and a candidate for the office of sheriff of Wythe county at the election then approaching for the ensuing term. He circulated among the voters the statement that he had heard from his wife, who had it from a negro woman, that the said Julia had been delivered of a bastard child (had a baby), and it was laid to Harkrader or to his son-in-law, a young man living in his house, who had married his daughter, and that Julia had gone to Hufford's house, winding up with, "would you vote for such a man," adding, "I believe it is old Bob's" (meaning Harkrader). Witness told the defendant that he did not believe the report was true, but Landreth replied that it must be so; that witness did not repeat this slander, but in two weeks it was all over the county of Wythe. Landreth went to another house, where a little sister of Julia was cared for by the family, as Julia was at Harkrader's, and repeated it there, adding, as an anchor to windward to shield himself from responsibility in such a suit as this, " don't tell anybody, it is nigger news."

The slanderous words were admitted on the trial, and were entirely untrue, which so appearing to the voters, Harkrader was elected sheriff, and under the plea of not guilty, offered other persons to prove that they heard the same slander. This evidence was inadmissible; it is no excuse for him that others had heard the same rumor after he himself had set it going, with the caution " don't tell anybody."

If such evidence were allowed, the guilty party could always provide a safe shield for himself by sending the slander broadcast through the country. *Cheatwood* v. *Mayo*, 5 Munford, 16; Justice Parsons in 6 Mass. Rep., 518.

Upon principle, this question is too plain, however, to need citation of authority. *Dillard* v. *Collins*, 25 Gratt., 345. This evidence was improperly admitted against the objection of the plaintiff, to which she duly excepted, which was error on the part of the trial court.

The verdict was for $5 and costs, the judge refused to set the verdict aside, and overruled the motion of the plaintiff to that end, but rendered a judgment for $5 only and omitted the rest of the finding of the jury. This was error, the court's prerogative was not to find a verdict, that was the province of the jury. The court had the power only to set the verdict aside and order a new trial if it appeared right to it to do so, but not to change the verdict and then render judgment on it. The jury had not found a verdict for too little to carry the cost and so to enable the court to refuse judgment for costs, but for a certain sum and costs. If this was irregular the judge should have set it aside and granted a new trial. But the verdict ought to have been set aside on account of the amount of damages being too small. It is rare that a court will disturb a verdict on this ground, as has been fully set forth by this court in the late case of *Ward* v. *White*, 86 Va., 217. But this is one of those cases where the measure of damages is to be supported upon no just principal whatever. It is so palpably and grossly wrong as to shock the moral sense of every just man.

A young girl, a maiden of unblemished name and fame, is dragged into the polluted air of a municipal canvass, and her reputation and character ruthlessly assailed with false and slanderous assaults upon her virtue and chastity—all for the pitiful reward expected, to blast the good name of his opponent for office, and himself profit by the ruin thus accomplished.

That it has done her no permanent injury in her reputation, nor her adopted father either, and was stamped out by the truth coming to light, is no defence for him. His injury to this young girl was such as entitled her to damages, to exemplary damages not only on her account, but to punish the offender.

In such a case the appellate court will not interfere with the verdict of the jury, unless it appears that the verdict was plainly extravagant or excessive, which applies equally to an

unjust assessing of the damages too low, as to an intemperate excess.  It is not until the result of the deliberations of the jury appears in a form calculated to shock the understanding, and implies no dubious conviction of their prejudice and passion, that the courts have found themselves compelled to interfere.

This is a striking illustration of this rule; a more striking can perhaps not be found.  It is so obviously inadequate and unjust as to call for the interference of an appellate court. And we are of opinion to reverse the judgment with costs.

JUDGMENT REVERSED.